IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal Action No. RDB-18-0142 |
| DAVIEN MAJOR EWING, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM ORDER

In 2019, Defendant Davien Major Ewing pled guilty to a single count of conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. (Plea Ag't ¶ 1, ECF No. 96.) At the time, a Section 846 conspiracy qualified as a "controlled substance offense," as contemplated by the advisory United States Sentencing Guidelines. *See* U.S.S.G. § 4B1.1. This interpretation resulted in Ewing's classification as a career offender, subject to a sentence enhancement and a guidelines range of 151 to 188 months' incarceration. (Presentence Investigation Report ("PSR") ¶¶ 20, 98, ECF No. 114.) Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulated to a sentence in the range of 96 to 120 months. (Plea Ag't ¶ 10.) Accepting this plea, this Court ultimately sentenced Ewing to 96 months' imprisonment, followed by 3 years of supervised release. (Judgment 2–3, ECF No. 126; Statement of Reasons 1, ECF No. 127.) Although this stipulated sentence was a downward departure from the applicable guidelines range, it was heavily influenced by Ewing's career offender designation, which provided the baseline for the parties' plea negotiations and played "a significant part" in their discussion. (Def.'s Mot. Compassionate Release 5, ECF No. 173; Gov't's Resp. Opp. Compassionate Release 5 n.2, ECF No. 175.)

Now pending is Ewing's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 173.) In support of this motion, Ewing notes that recent Fourth Circuit authority changed the interpretation of "controlled substance offense" under U.S.S.G. § 4B1.1, and that he would not have been designated a career offender under this provision if he was sentenced today. (Def.'s Mot. 1–2.) Accordingly, he requests a measured reduction in his sentence from 96 months to 77 months' incarceration. (*Id.* at 1.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons articulated below, Ewing's Motion for Compassionate Release (ECF No. 173) is hereby **GRANTED.** Defendant Davien Major Ewing shall be resentenced to a term of incarceration of 77 months.

## BACKGROUND

The following facts were stipulated in the parties' plea agreement and set forth in the Government's Presentence Investigation Report. (*See* Plea Ag't 9–10; PSR ¶¶ 1–9.) In 2017, investigators with the Federal Bureau of Investigation's Safe Streets Task Force began investigating Eric Brandon McKnight ("McKnight"), who was suspected of trafficking large quantities of heroin throughout Baltimore City. (Plea Ag't 9.) Between June and November 2019, the FBI determined that Defendant Davien Major Ewing ("Ewing") was acting as a distributor for McKnight. (*Id.*) Pursuant to a court-ordered wiretap, the FBI intercepted several phone calls between McKnight and Ewing, in which both parties "discussed, planned, or agreed to engage in narcotics transactions." (*Id.*)

On July 31, 2018, Ewing, McKnight, and several additional co-defendants were charged in a five-count Superseding Indictment alleging controlled substance and firearm offenses. (*See*

Superseding Indictment, ECF No. 27.) As relevant, Ewing was charged in Count One, alleging Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Fentanyl, Cocaine Base and Marijuana, in violation of 21 U.S.C.§ 846. (PSR ¶ 1.) Pursuant to his plea agreement, his participation in this offense involved conspiring to possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(b)(1)(C). (*Id.* ¶ 2; Plea Ag't ¶ 1.)

On March 15, 2019, Ewing signed a Rule 11(c)(1)(C) plea agreement agreeing to a 96- to 120-month sentencing range, (Plea Ag't ¶ 10), a significant downward departure from the applicable 151- to 188-month sentencing range, (PSR ¶¶ 20, 98). On August 6, 2019, this Court sentenced Ewing to 96 months' imprisonment, to be followed by 3 years of supervised release. (*See* Judgment 2–3; Statement of Reasons 1.) Ewing has now remained in federal custody for approximately 53 months, dating back to his initial appearance on September 11, 2018. (Def.'s Mot. 3–4; *see* Initial Appearance, ECF No. 44.) Accordingly, he has approximately 33 months remaining on his 96-month sentence. (Def.'s Mot. 3.) His projected release date is October 21, 2025, accounting for 162 days of good-time credit. (*Id.* at 3 n.1.)

## ANALYSIS

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The

Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction and after weighing the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

I. **Administrative Exhaustion Requirements**

Ewing has satisfied the preconditions to filing his Motion for Compassionate Release. On January 26, 2023, Ewing petitioned the warden of his facility seeking compassionate release on the same grounds alleged in his motion. (Def.'s Mot. 3.) This motion was filed on February 10, 2023, less than 30 days after Ewing filed his request, and Ewing has not received a response from the warden of his facility. (*Id.*) Nevertheless, the Government has waived the First Step Act's exhaustion requirement. (Gov't's Resp. 1 n.1 ("[T]he government is not raising any issue concerning the exhaustion of administrative remedies.").). *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021) ("Because the [exhaustion] requirement is not jurisdictional, it may be waived or forfeited."). Accordingly, Ewing's motion is properly before this Court.

II. **Extraordinary and Compelling Circumstances**

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious

4

physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Similarly, a defendant who is "(i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," faces extraordinary and compelling circumstances that may justify release. U.S.S.G. § 1B1.13 cmt. n.1(B). Finally, the Commission has authorized the Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor the Bureau of Prisons' regulations constrain this Court's analysis. As Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prisons' authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020); *accord United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (holding that "the First Step Act allows courts independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and compelling'"). Ewing exclusively argues that recent Fourth Circuit authority invalidates his career offender status. (Def.'s Mot. 1–2.) He contends that this sentence would have affected the baseline for his plea negotiations, resulting in a lower sentence had he pled guilty today. (*Id.* at 5–6.)

5

It is firmly established that intervening changes in sentencing law may constitute extraordinary and compelling reasons that justify a motion for sentence reduction. *See United States v. Concepcion*, 142 S. Ct. 2389, 2404 (2022); *see, e.g.*, *United States v. Day*, 474 F. Supp. 3d 790, 805 (E.D. Va. 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 979–81 (C.D. Cal. 2020); *United States v. Smith*, 379 F. Supp. 3d 543, 546 (W.D. Va. 2019). As Chief Judge Bredar noted last year in *United States v. Elzey*, "a change in career offender status, and a consequent change in the appropriate Guidelines sentencing range, can qualify as an extraordinary and compelling reason warranting compassionate release." JKB-09-0288, 2022 WL 316717, at *3 (D. Md. Feb. 2, 2022); *see also United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020) (Blake, J.); *United States v. Redd*, 444 F. Supp. 3d 717, 722–23 (E.D. Va. 2020). Such is the case here. In *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), the Fourth Circuit held that federal narcotics conspiracy offenses under 18 U.S.C. § 846 do not categorically qualify as controlled substance offenses under U.S.S.G. § 4B1.2(b), and are not a valid predicate for a career offender sentence enhancement under this provision. 935 F.3d at 238. As Ewing's instant offense is a Section 846 narcotics conspiracy, he would not have been designated a career offender if he were sentenced today.

Removing Ewing's career offender designation would result in a substantial change to the applicable guidelines range. Ewing received an offense level of 29[1] and a criminal history category of VI based on his designation as a career offender, yielding a Guidelines range of 151 to 188 months. (PSR ¶¶ 14–23, 98.) Absent his career offender designation, Ewing would

---

[1] Specifically, Ewing was assigned a base offense level of 26, which was upgraded to 32 by his designation as a career offender and downgraded to 29 pursuant to U.S.S.G. § 3E1.1 following his acceptance of responsibility. (PSR ¶¶ 19–23.)

6

have received a final offense level of 23 and a criminal history category of VI, yielding a Guidelines range of only 92 to 115 months. (Def.'s Mot. 5; PSR ¶¶ 19–20 (prescribing base offense level of 26 before enhancement); PSR ¶ 39 (assigning criminal history category of VI).) This Court has no difficulty concluding that the Fourth Circuit's holding in *Norman*, and the consequent changes to the appropriate Guidelines sentencing range, constitute "extraordinary and compelling reasons" to consider a sentence reduction. Accordingly, Ewing's motion will turn on the application of the 18 U.S.C. § 3553(a) factors.

The Government contends that Ewing's current 96-month sentence constitutes a substantial departure from the Guidelines range that was applied at sentencing, and falls at the bottom of the 92- to 155-month range that would apply if Ewing was sentenced today. (Gov't Resp. Opp. 2–4.) Additionally, the Government notes that Ewing has a substantial criminal history that is littered with felony and misdemeanor controlled substance offenses. (*Id.* at 3–4.) *Cf. United States v. Myers*, No. CCB-01-118, 2021 WL 2401237, at *3 (D. Md. Jun. 11, 2021) (Blake, J.) (evaluating, among other considerations, "whether the sentence imposed is grossly disproportionate to a sentence the defendant would likely receive if sentenced today"). Accordingly, the Government asserts that Ewing's sentence is categorically reasonable, as it is in line with what he would received if he was sentenced today.

However, Ewing pled guilty pursuant to Rule 11(c)(1)(C); he was not convicted at trial. A C-Plea is the product of a measured negotiation between the defendant and the government. Invariably, plea agreements are reached in the shadow of the advisory Sentencing Guidelines, which serve as the baseline for all sentencing decisions. *See Gall v. United States*, 552 U.S. 38, 49 (2007). Changes to the applicable Guidelines range shift the balance of this bargain by moving

the starting line for the parties' negotiations and influencing the calculus of risk that a defendant must consider when electing to plead guilty. *See, e.g.*, *United States v. Moore*, No. ELH-18-431, 2022 WL 137865, at *14 (D. Md. Jan. 14, 2022) (Hollander, J.) (observing that a recommended below-Guidelines sentence in connection with a C-Plea "undoubtedly took the erroneous Guidelines into account"); *United States v. Lockett*, No. 3:04cr17-HEH, 2013 WL 1193226, at *2 (E.D. Va. Mar. 22, 2013) (Hudson, J.) ("While the ultimate sentence imposed was based on the underlying facts of the case, the Defendant's prior criminal history, and a consideration of sentences imposed in comparable cases, this Court cannot conclude that the Guidelines did not at least provide some gravitational pull in their direction.").

In this case, the parties "specifically contemplated that [] Ewing was a career offender," a designation that resulted in a Guidelines range of 188 to 235 months. (Def.'s Mot. 5 (citing Plea Ag't 5).) The Government concedes that "the career offender range probably informed the negotiation of the C-plea recommendation," and "was probably a significant part of that discussion." (Gov't's Resp. 5 n.2.) Despite this designation, the parties agreed to a substantial downward departure, stipulating to a sentence range of 96 to 120 months. (*See* Plea Ag't ¶ 11.) While this departure aligns closely with the 92- to 115-month range that would be applicable today, it is likely that the parties would have reached a comparable departure as consideration for accepting a C-Plea. Accordingly, this Court is satisfied that "extraordinary and compelling" reasons justify considering Ewing's motion.

### III. 18 U.S.C. § 3553(a) Factors

In *McCoy*, the Fourth Circuit made clear that "not all defendants convicted under § 924(c) should receive new sentences," and that "courts should be empowered to relieve some

defendants of those sentences on a case by case basis." 981 F.3d at 286–87. Accordingly, a court must conduct an "individualized assessment" under § 3553(a) to determine a defendant's eligibility for a reduction. *McCoy*, 981 F.3d at 286. These factors require this Court to consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline range; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a); *Bryant*, 2020 WL 2085471 at *4. On balance, this Court concludes that the § 3553(a) factors justify granting Ewing's motion, and reducing his sentence to 77 months, or roughly seven and a half years.

    Ewing's offense was serious, and his criminal history is extensive. Ewing was convicted of participating in a multi-defendant conspiracy that trafficked as much as 400 grams of heroin in Baltimore City. (PSR ¶ 9.) Moreover, this is not Ewing's only involvement in the drug trade. Prior to the instant offense, Ewing received seven state convictions for the possession and distribution of controlled substances and was arrested on several additional narcotics charges. (*Id.* ¶¶ 28–39, 60.) His convictions were sufficient to accumulate a criminal history score of 15 and a criminal history category of VI, irrespective of Ewing's career offender status. (*Id.* ¶ 39.) Accordingly, the Government contends that Ewing "is substantively and functionally . . . a 'career' offender, notwithstanding *Norman*'s change to the application of the categorical approach." (Gov't's Resp. 5.)

9

However, these factors are mitigated by Ewing's "personal history and characteristics." 18 U.S.C. § 3553(a).[2] Ewing attributes his entanglement with the drug trade to his challenging upbringing, and his lifelong struggle with addiction. (Def.'s Mot. 8.) *See, e.g.*, *United States v. Nance*, 957 F.3d 204, 213 (4th Cir. 2020); *United States v. Zelaya*, 908 F.3d 920, 930 (4th Cir. 2018) (observing the relevance of a defendant's upbringing and conduct in prison to the § 3553(a) factors). He "[grew] up as the child of parents addicted to heroin; [received] psychiatric treatment in elementary school; and predictably himself [abused] drugs beginning at age 12." (*Id.*; *see* PSR ¶¶ 63, 74–75, 77–81.) These factors suggest that treatment and rehabilitation, not incarceration and isolation, may be Ewing's most urgent need. As the conditions of supervised release already require Ewing to enroll in a substance abuse treatment program, (Judgment 4), this Court is satisfied that "the need for rehabilitative services" will be adequately served if Ewing's sentence is reduced. 18 U.S.C. § 3553(a).

Ewing's extensive criminal record and repeated involvement in the drug trade suggest that there is a continued need for deterrence and public protection, and that a time-served sentence would not be appropriate. Nevertheless, considering the substantial impact of Ewing's career offender designation and accounting for his lengthy struggles with addiction, this Court concludes that it is appropriate to resentence Ewing to a period of incarceration commensurate with what he would have received had he pled guilty to the same conduct today. Absent the erroneous career offender designation, the record reflects that Ewing would have

---

[2] While not highlighted by the parties, this Court notes that Ewing has demonstrated relatively clean conduct while incarcerated—with only three infractions on record. (*See* Def.'s Mot. 8.) *Cf. Pepper v. United States*, 562 U.S. 476, 491 (2011) (holding that "evidence of postsentencing rehabilitation may be plainly relevant to 'the history and characteristics of the defendant'" and "'the need for the sentence imposed'" (quoting 18 U.S.C. § 3553(a))).

10

received an advisory Guidelines range of 92 to 115 months. (Def.'s Mot. 5; PSR ¶¶ 19–20, 38.) This Court agrees that Ewing's proposed 77-month sentence approximates the departure that he would have been granted in accepting a C-Plea that was negotiated based on the proper guidelines range. This result is "sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), to serve the interests of sentencing in this case.

## CONCLUSION

For the reasons stated above, it is hereby **ORDERED** this 23rd day of February, 2023, that Defendant Davien Major Ewing's Motion for Compassionate Release (ECF No. 173) is construed as a Motion for Sentence Reduction and is **GRANTED**. Specifically:

1. Defendant's Motion for Compassionate Release (ECF No. 173) is **GRANTED**;

2. Defendant's Motion for Appointment of Counsel (ECF No. 144) is **DENIED** as **MOOT**;

3. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Defendant Davien Major Ewing's term of incarceration is reduced to 77 months;

4. All terms and conditions of supervised release shall remain in effect;

5. An Amended Judgment & Commitment Order shall be prepared to reflect Defendant Davien Major Ewing's reduction in sentence; and

6. The Clerk of the Court shall send copies of this Memorandum Order to the parties.

_____/s/_____
Richard D. Bennett
United States Senior District Judge